RECORD NOS. 11-7022(L); 11-7028

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
### For The District of Columbia Circuit

<br>

## YVONNE BROWN,

*Plaintiff-Appellant/Cross–Appellee*,

**v.**

## DISTRICT OF COLUMBIA,

*Defendant-Appellee/Cross–Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

––––––––––––

## PAGE PROOF BRIEF OF APPELLANT

––––––––––––

Donald M. Temple
TEMPLE LAW GROUP
1229 15th Street, N.W.
Washington, DC 20005
(202) 628-1101

*Counsel for Appellant*

## CERTIFICATE AS TO PARTIES,
## RULINGS AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1) of this Court's rules, counsel for Appellant Yvonne Brown certifies the following:

### A.     PARTIES

1.     Yvonne Brown was the Plaintiff in the underlying trial before the United States District Court for the District of Columbia and is the Appellant in the immediate appeal.

2.     The District of Columbia government (Department of Corrections) was the Defendant in the underlying trial case and is Appellee and cross-Appellant in the immediate case.

3.     There are no *amici* in this matter.

### B.     RULINGS UNDER REVIEW

The Decision and Order of the United States District Court of the District of Columbia, dated March 3, 2011.

### C.     RELATED CASES

There are no prior cases involving the orders under review in the case and there are no pending related cases.

i

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES,
RULINGS AND RELATED CASES ........................................................................i

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ...........................................................................iv

JURISDICTIONAL STATEMENT ...............................................................1

ISSUES PRESENTED ...................................................................................1

FEDERAL STATUTES ..................................................................................2

APPEAL ..........................................................................................................5

STATEMENT OF THE CASE .......................................................................6

FACTUAL BACKGROUND ..........................................................................7

    Brown's Employment History .....................................................................7

    Bessie Neal Class Action ............................................................................7

    Brown's EEOC Complaint .........................................................................8

    Brown's Disability Retirement ...................................................................8

    Brown's Sexual Harassment .....................................................................10

    Brown's Mental Decompensation .............................................................15

SUMMARY OF ARGUMENT ......................................................................18

ARGUMENT ....................................................................................19

    A.    STANDARD OF REVIEW .............................................19

    B.    EQUITABLE RELIEF SHOULD HAVE BEEN AWARDED
        BELOW ........................................................................19

        1.    CONSTRUCTIVE TERMINATION IS NOT A
            CONDITION PRECEDENT TO EQUITABLE RELIEF
            IN THIS CIRCUIT ...................................................22

        2.    TRIAL EVIDENCE CLEARLY ESTABLISHED
            APPELLANT'S CONSTRUCTIVE TERMINATION............25

        3.    APPELLANT IS MINIMALLY ENTITLED TO BACK
            PAY THROUGH DATE OF DISABILITY
            RETIREMENT ........................................................29

CONCLUSION ..................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405, 95 S. Ct. 2362, 45 L .Ed. 2d 280 (1975) .........................19, 21

*Barbour v. Merrill*,
    48 F.3d 1270 (D.C. Cir. 1995)....................................................20, 21, 22, 24

*Berger v. Iron Workers Reinforced Rodmen, Local 201*,
    170 F.3d 1111 (D.C. Cir. 1999)...............................................................20, 22

*Berger v. Iron Workers*,
    Civil Action No. 75-1743, 1994 U.S. Dist. LEXIS 5342,
    1994 WL 151292 (D.D.C. Apr. 14, 1994)............................................... 20-21

*Bessye Neal et al. v. Director, D.C. Department of Corrections*, *et al.*,
    Civil Action No. 93-2420 RCL ......................................................................7

*Bourque v. Powell Electrical Manufacturing Co.*,
    617 F.2d 61 (5th Cir. 1980) ..................................................................... 25-26

*Clark v. Marsh*,
    665 F.2d 1168 (D.C. Cir. 1981)............................................................25, 28

*Dennis v. Columbia Colleton Med. CId. at Inc.*,
    290 F.3d 639 (4th Cir. 2002) ......................................................................25

*E.E.O.C. v. Sunfire Glass, Inc.*,
    No. CV-08-1784-PHX-LOA,
    2009 WL 976495 (D. Ariz. Apr. 10, 2009) ..................................................21

*Fogg v. Gonzales*,
    492 F.3d 447 (D.C. Ct. App. 2007) .............................................................23

*Authorities Chiefly Relied Upon are Marked with an Asterisk

iv

*Int'l Bd. of Teamsters v. United States*,
    431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977) ...............................20

*\*Larranaga v. Department of Commerce*,
    1991 WL 241903 (D.D.C. 1991)...................................................................28

*Lewis v. District of Columbia*,
    791 F. Supp. 2d 136,
    112 Fair Empl. Prac. Cas. (BNA) 924 (D.D.C. 2011)...................................30

*Loeffler v. Frank*,
    486 U.S. 549, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988) ............... 20, 22-23

*\*Pollard v. E.I. du Pont de Nemours & Co.*,
    532 U.S. 843, 121 S. Ct. 1946, 150 L. Ed. 2d 62 (2001) .......................21, 22

*Porter v. Natsios*,
    414 F.3d 13 (D.C. Cir. 2005)..................................................................19, 20

*Reneau v. Wayne Griffin & Sons, Inc.*,
    945 F.2d 869 (1991) ....................................................................................24

*Shore v. Federal Express Corp.*,
    42 F.3d 373 (1994) ......................................................................................24

*Waters v. Wisc. Steel Works of Int'l Harvester Co.*,
    502 F.2d 1309 (7th Cir. 1974) ....................................................................21

**STATUTES**

28 U.S.C. § 1343................................................................................................1

28 U.S.C. § 1343(3) ..........................................................................................3

42 U.S.C. § 706(g) ..........................................................................................22

42 U.S.C. § 1981a ........................................................................................3, 4

42 U.S.C. § 1981a(b)(2)..................................................................................20

42 U.S.C. §§ 2000e *et seq.*.................................................1, 2, 3, 8, 20, 22, 23

42 U.S.C. § 2000e-2.................................................................2, 3

42 U.S.C. § 2000e-3..................................................................2

42 U.S.C. § 2000e-5(f)............................................................1, 2, 3

42 U.S.C. § 2000e-5(g)(1) .......................................................4, 20

## JURISDICTIONAL STATEMENT

This Court has jurisdiction of this appeal pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1343. This appeal was timely filed and is taken from a final order.

## ISSUES PRESENTED

1.      Whether the District of Columbia Circuit requires a finding of constructive termination prior to an award of equitable relief?

2.      Whether, after a favorable verdict below, the lower court erred in its finding that Appellant was not constructively terminated and denied a front pay award, although Appellee threatened Appellant's termination while she was still on workers compensation as a result of Appellee's sexual harassment?

3.      Whether, after a favorable verdict below, the lower court erred in its finding that Appellant was not constructively terminated and denied a back pay award through the date of judgment, although Appellee threatened Appellant's termination while she still was on workers compensation as a result of Appellee's sexual harassment?

4.      Whether, after a favorable verdict below, the lower court erred in denying Appellant  back pay award through the date of her separation, although Appellate threatened Appellant's termination while she was still on workers compensation as a result of Appellee's sexual harassment?

1

## FEDERAL STATUTES

Title VII, as amended, SEC. 2000e-2. [Section 703] provides that:  It shall be an unlawful employment practice for an employer  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §§ 2000e, *et seq.* and 42 U.S.C. § 2000e-5(f)  provide that the Equal Employment Opportunity Commission is empowered to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title.  Further, a charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the

2

State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.  Further, in addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1).

28 U.S.C. § 1343(3) provides that the United States District Courts have original jurisdiction of any civil action authorized by law to be commenced by any person To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

Title VII, as amended, SEC. 2000e-2. [Section 703] provides that:  It shall be an unlawful employment practice for an employer  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. §§ 2000e, *et seq.* and 42 U.S.C. § 2000e-5(f)  provide that the Equal Employment Opportunity Commission is empowered to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title.   Further, a charge under this section shall be filed within

3

one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.  Further, in addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years.

## APPEAL

Appellant, Yvonne Brown, respectfully appeals an order of the United States District Court, dated March 3, 2011 following a jury verdict in her favor, which lower court's post trial order denied her equitable relief in back and front pay.

## STATEMENT OF THE CASE

On January 8, 2002 Yvonne Brown filed a charge of sexual harassment against the District of Columbia Department of Corrections, EEOC Charge Number 100-A-200283.    On September 30, 2005, the EEOC issued a determination that reasonable cause existed to believe that Ms.  Brown had been subjected to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.*   The matter was then conciliated and became the subject of extensive unsuccessful settlement negotiation between the Department of Justice and the District of Columbia.  On June 18, 2009 Plaintiff filed the underlying case in the United States District Court for the District of Columbia.  The matter was tried on October 18 through October 22, 2010.  A jury verdict was entered for Plaintiff in the amount of $235,000. Subsequent motions were held relative to Appellant's equitable relief in the form of back and front pay. On March 3, 2011 the lower court entered an order and memorandum denying Appellant's requested equitable relief on grounds that the trial record did not demonstrate a finding that Brown was constructively terminated.

6

## FACTUAL BACKGROUND

### Brown's Employment History

Yvonne Brown ("Brown") began employment with the District of Columbia Department of Corrections ("DOC") in 1985 and continued as a full time employee until 2005 when she retired on disability. Brown was otherwise scheduled to retire

### Bessie Neal Class Action

Prior to the immediate action, Brown was a class member and protected witness in *Bessye Neal et al. v. Director, D.C. Department of Corrections*, *et al.*, (Civil Action No. 93-2420 RCL) a class action sexual harassment lawsuit against the Appellee. See also Trial Transcript, October 20, 2010 at 51-54. In 2001 and 2002, Brown was subject to an existing court order which required a Special Master's approval prior to personnel actions being with respect to protected witnesses. Brown was listed as protected witness #43 in the United States District Court's Order dated March 15, 1995. Testimony during the trial revealed that Brown was a critical witness in the Neal Trial and was retaliated against as a result of her testimony.[1]

---

[1] / Brown's then private counsel resigned in 2008 from the law firm which represented her. New counsel was retained, and shortly after receipt of a right to sue letter, the immediate litigation was filed.

**Brown's EEOC Complaint**

Between 2000 and 2001, Appellant Brown was a victim of consistent brutal and violent sexual harassment and assaults by Lieutenant William Johnson ("Johnson"), which in Johnson's violent sexual assault of Appellant on July 19, 2001. On that date, he threw her to the floor and attempted to get on top of her. She left work and immediately sought medical care and never returned to work again. On January 8, 2002 Yvonne Brown filed a charge of sexual harassment against the District of Columbia ("D.C.") Department of Corrections, EEOC Charge Number 100-A-200283. On September 30, 2005, the EEOC issued a determination that reasonable cause existed to believe that Ms. Brown had been subjected to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq..* The matter was then conciliated during which time it became the subject of extensive unsuccessful settlement negotiation between the Department of Justice and the District of Columbia.

**Brown's Disability Retirement**

On or around March 2004, during the pendency of Brown's EEOC investigation, Odie Washington, then Director, Department of Corrections, notified Brown of his intention to terminate her: "This is a *notice of a final decision* regarding the proposal to remove you from your position of Correctional Officer

8

with the Department of Corrections. (Emphasis added). (Plaintiff's Trial Exhibit 9) The action is based on a charge of Incompetence, to wit: "Inability to satisfactorily perform one or more major duties of his/her position." Notably, the letter stated: "This is a straight forward, policy driven decision based solely on the fact that you are physically unable to perform the essential functions of your official position due to an on the job injury; which constitutes the aggravating factor in this matter pursuant to Douglas factor Number (5). This factor considers 'the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to performed assigned duties." Brown was advised that her effective termination date would be one week later. March 12, 2004. Id. Brown's personnel records confirm that her disability retirement was approved by the Office of Personnel Management on March 25, 2004, that she was then presently still in receipt of workers compensation from the D.C. Office of Compensation and Benefits. Based upon her disability retirement she was able to thwart the agency's intended termination, which would have deprived her of an opportunity to retire from the department. (See Plaintiff's Trial Exhibits 10 and 11). At that time, she was not medically able to return to work. Nor did she have any other meaningful income options.

**Brown's Sexual Harassment**

Sometime around April 2000 Lieutenant Johnson befriended Brown through the discussions about the Bible. On one particular day, he entered his office behind Brown and pushed her through his office. Trial transcript, October 18, 2010 at 56:24-25; 57:1-2. He then put his left forearm around her neck and started feeling her breast with his right hand. Id. at 58:24-25;59:1. Brown immediately complained to Corporal Childs and Sergeant Graham. Id. at 57:12-13. Also in April 2000 Lieutenant Johnson came into the Dispatch Office with Brown and Corporal Childs. Id. at 65:15-17. Lieutenant Johnson placed his arm forcefully around Brown's neck, and started pulling her towards him while rubbing her breasts. Id. at 65:18-19. She started screaming at which time Childs said, "Oh shit, let me get out of here. I'm not witnessing nothing." Id. at 65:19-21. Childs had to pass Ms. Brown to leave the office. She tried to leave with him but Lieutenant Johnson held her. Id. at 65:22-25. The manner in which he grabbed and squeezed her neck virtually paralyzed her. Id. at 66:10-14. Only the entering of a car into the parking lot caused Lieutenant Johnson to release his hold on Ms. Brown. Id. at 66:19-22.

Lieutenant Johnson also told Brown that no one would believe her, she wasn't liked, she should be glad that he talked to her and stated further: "If you tell anybody, I'm going to kill you." Id. at 67:4-6. Lieutenant Johnson also told Ms.

Brown that there was only going to be one story told, the one he tells because he was going to kill Ms. Brown. Id. at 68:18-20. Once again, Ms. Brown reported this incident to Sergeant Graham who did not report this incident. Id. at 68:5-7, 22-25;69:1-4.

In June 2000, while Brown was in the dispatch office with Sergeant Graham, Corporal Henry, and Corporal Daniels, Lieutenant Johnson entered the room and asked them to leave. Everyone exited immediately. Id. at 72:15-19. As Brown tried to exit, Lieutenant Johnson grabbed and pulled her hair and she couldn't get out of the office. He pulled her over to the front window and adjusted the door so that couldn't escape. Id. at 72:20-24. She then screamed and fought Lieutenant Johnson as he continued to feel on her. Id. at 73:1-2. She was held captive for approximately ten (10) minutes until her relief arrived at the door at the shift's end. Id. at 73:10-12, 15. Brown had physical bruises from the manner in which Lieutenant Johnson handled her. Id. at 73:17-18. Brown did not report this incident to her Supervisor because he was fully apprised of Lt. Johnson's actions. While this horrific experience was transpiring, Brown heard laughing in the hallway. Among those laughing was her Supervisor, Sergeant Graham Id. at 74:11-12.

Brown subsequently went to the bathroom to examine herself and while there showed her bruises to a fellow worker, Kathy Dennie. October 19, 2010

Trial Transcript at 69:1-17.   Dennie also observed Brown crying in the workplace. Id. at 11.   According to Dennie, Brown never wanted to be in the room with Johnson by herself, and would ask Dennie to stay in the room with her.   Id. at 13-18.   However, Johnson would order her to leave from time to time, and Brown would ask that she remain.   Id. at 71:7-11.   Among others, Dennie testified that she reported Johnson's sexual brutality in year 2000 to Captain M.L. Brown ("Brown"), who Dennie stated was the acting Warden at the time.   Id. at 75: 13-17; 77: 10-17.   Captain Brown, however, took no action.

In October 2000, Brown requested to work overtime for Christmas from Lieutenant Johnson.   She was not requesting to work directly with him.   If she worked overtime on his shift, she would be on roving patrol and in a vehicle all night.   October 18, 2010 Trial Transcript, at 76:9-13.   Johnson told Brown she could work overtime after she came into the back office and let him go up in her. Id. at 76:14-16.   She responded: "Then I guess I won't be working overtime."   Id. at 76:18.   Brown was denied the opportunity to earn additional income from overtime.   Later that month, Brown again requested to work overtime for Christmas, this time in the presence of Corporal James.   Lieutenant Johnson told Ms. Brown she could work overtime if she came over, sat on his lap and gave him a "lip-lock." Id. at 77:6-10. Lieutenant Johnson didn't touch Ms. Brown that day; he stuck out his tongue and rubbed his groin area. Id. at 77:13-16:20-21. Other

incidents continued in year 2000.  After these encounters with Johnson, Brown would experience neck cramps and sometimes couldn't move her neck.  Id. at 80:18-19.  Between the months of October 2000 and April 2001, Ms. Brown minimized her contact with Lieutenant Johnson by way of hiding in the storage closet or ladies room. Id. at 81:3-5.  She ensured she was able to be contacted via radio and alerted her colleague, Corporal Childs, of her whereabouts.  Id. at 81:7-10.

In April 2001, Johnson grabbed Brown by the back of her neck and they got into a tussle.  Id. at 81:16-17.  But he stopped when a fellow worker arrived in the parking lot, from whence one could see inside the dispatch office.  Id. at 81:13-22.  Also, in April 2001, Johnson came into the dispatch office and grabbed Brown by her hair, which resulted in her inability to grow hair in this area.  Id. at 82:24-25; 83:1-2.  He forcefully pulled her hair and her neck and once again rubbed her breast. As she struggled to obtain her freedom, he squeezed her breast harder. Id. at 83:3-5.  Once again, Ms. Fryer pulled in the front of the building.  When she exited her vehicle, Johnson and Brown still struggled.  Id. at 83:6-10.

That same evening, Brown was on her way to give her shift report to Supervisor No. 2.  As Brown delivered her shift report, Lieutenant Johnson was sitting on a desk in the hallway.  Id. at 83:15-16.  Sergeant Graham, Corporal Henry and four (4) other male employees gathered in the hallway.  Id. at 84:4-5.

13

When Brown walked past them, they grabbed her and pushed her between Johnson's opened legs. Id. at 84:6-9.  Johnson pulled her towards him while the others helped to push her on him. Id. at 84:9-11.  Johnson then grabbed her in her private area. Id. at 84:25; 85:1-2.  When she got away from them, she went into the ladies room and began to cry.  She could hear men in the men's room laughing.  She exited the ladies room and upon subsequent examination discovered her pubic hairs in her panties from Johnson's forceful grab.  Id. at 84:20-24.  During April 2000 through July 2001, Johnson threatened Brown telling her that there was only going to be one story told, his story and that he would kill her.  Id. at 86:8-10, 15-18.

Brown was aware of the sexual harassment policy and interpreted it to mean that once a complaint was a made, the Supervisor was to make the proper notification.  Id. at 90:25;91:1.  She further believed that if a supervisor witnessed sexual harassment he was supposed to report it.  Id. at 91:5-6.  (See Plaintiff's Trial Exhibit 1)

In June 2001, Brown was working in the dispatch office and didn't notice that Lieutenant Johnson had entered the office.  He pulled up a chair next to her, put his arms around her and started pulling her in towards him.  Brown began to fight and fell out of the chair. Id. at 92:21-25;93:1.  Johnson also fell to the floor

14

and then tried to climb on top of her. She hit him in the groin and was able to escape. Id. at 93:2-4.

In late June 2001, Ms. Brown reported to a Lieutenant King, a supervisor in the same unit, that she was being harassed by Johnson and felt nervous and depressed. She physically showed him how her hair was coming out and told him she was tired. Id. at 94:21-25. Lieutenant King commented, "You do look tired. Maybe you need to take some time off." Id. at 95:1-2. Brown convinced Corporal Childs to witness her report of Johnson's harassment to Lieutenant King. Id. at 96:6-14. Brown, in the presence of Corporal Childs, then reported to Lieutenant King that Lieutenant Johnson was harassing. Lieutenant King responded, "Stop bitching." Id. at 96:18-21.

### Brown's Mental Decompensation

On July 18, 2001, Brown "lost it." Id. at 102:5-6. Lieutenant Johnson came out of roll call and began licking his tongue at her. Id. at 102:7-10. Brown was disgusted and fed up and went to the time and attendance building and spoke with a Corporal Hill. Id. at 102:12-14. After returning to the dispatch office, Brown was visibly upset and has no recollection of what transpired in the dispatch office after this point. Brown and Corporal Daniels went to Lieutenant King. Her memory of the conversation and order of events were. She had no recollection as to

how she arrived home. Id. at 103:21-22. This was the last day Brown worked in the Transport Unit dispatch office. Id. at 102:2-3.

As a result of Johnson's ongoing, violent physical and sexual assaults, Brown decomposed; she lost her emotional and mental competency. Id. at 102:5-6. She ended up in her psychiatrist' office where she received urgent psychiatric care to emotionally stabilize her. Id. at 104:4-9. Between July 2001 and 2005, Brown was considered and approved for Workers Compensation. Id. at 109:2-8. This determination was based upon a review of competing medical/psychiatric assessments, including her treating Psychiatrist, Dr. Susan Price. Dr. Price initially treated Appellant on July 19, 2001 at which time Brown, while crying, "appeared very distressed, shaky, and reported an incident in which she had been sexually assaulted." Trial transcript, October 19, 2010 at 157: 15-17, 174: 9-10. Her initial diagnosis was adjustment disorder with depressed mood, but was modified to post traumatic stress disorder on July 7, 2001. Id. at 158:17-25.[2] At trial, Dr. Price described Brown as extremely withdrawn, hyper vigilant, probably misinterpreting things around her, distressed, hopeless, and helpless, worthless and with heightened levels of anxiety. Id. at 170: 24-25, 171: 1, 19-25; 172: 1-10. On July 20, per Dr. Price's reference, Brown was also seen by Sandra Wells, a pycho-therapist. Brown expressed intermittent suicidal ideations since the sexual

---

[2] / Appellant was seen on numerous occasions for psychological treatment and therapy between 2001 and 2008.

harassment began with a plan to use a gun from Appellee's armory.  Id. at 176: 2-4. After a visit with Dr. Price on July 27, 2001 Appellant was prescribed Paxil and Klonopin.   As of January 2002, Appellant's symptoms and diagnosis were unchanged. Id. 186 at 6-11. As of September 2002, Brown still on workers compensation, experienced symptoms of distrust, sleeplessness, mood swings and negative memories.  Id. at 188:6-25.  As of February 21, 2003 Brown's depressive symptoms increased, as did her sense of helplessness, hopelessness, and worthlessness.  She also continued to experience a loss of self-esteem and difficulties sleeping.  Id. at 191: 1-13.  Dr. Price testifies that in March 2003, Appellant was "increasingly distressed and having more flashbacks and increased depression and hopelessness and worthlessness."  Id.  at 192: 23-24.  She reported more incidents of being followed and hearing clicks and cutoffs on her telephone.  Id. at 192: 24-25, 193: 1-2.  She also reported a heightened state of fear and apparent paranoia,  as  well  as  her  unsuccessful  compliance  with  workers compensation authorities, applying for other jobs in the D.C. government but not being selected for any.  Id. at 193:3-16.   Dr. Price further testified that her suicidal risk had increased as a result of her hopelessness and opined that she was not able to work at that time. Id. at 194: 10-14.  Appellant presented these same symptoms in March and May 2004.  Id. at 197: 9-19, 25, 198: 1-3.   As of December 2005, Dr. Price opined that Appellant could not work.  Id. at 199: 2-10.  She further

opined that Brown was permanently unable to work for her employer. See Trial Transcript, October 20, 2010, at 6:18-25.

The trial court erred in several respects. In the first instance, it determined that Brown, , was required to show a constructive termination in order to justify an award of equitable damages. The court correctly determined that if the evidence during the trial supported a constructive termination finding, Plaintiff would be entitled to equitable damages. Despite Appellee's threatened termination of Appellant, while still on approved workers compensation because of Appellee's sexual harassment, the trial court determined that Brown voluntarily terminated her employment and there was no constructive termination. The trial court erred in its decision to deny Appellant back pay minimally from the date of her sexual harassment claim through the date on which she retired on disability.

In sum, the court below denied Plaintiff back pay through 2005, back pay through the date of judgment, 2010 and front pay.

## SUMMARY OF ARGUMENT

This case presents several important questions regarding equitable relief in Title VII sexual harassment cases. Here, Brown was an employee victim and awarded workers compensation because of the employer's sexual harassment. The employer then noticed her termination within approximately one week of said notice. In order to preserve long term income and benefits, Brown is forced to take

18

disability retirement. Appellant argues that this Circuit allows an award of equitable relief notwithstanding a showing of constructive termination.    In the alternative, assuming *arguendo*, that this circuit requires such a showing, the trial evidence demonstrates a basis for a constructive termination finding.  Appellant argues that she is minimally entitled to back pay through the date of her disability retirement, which preceded the judgment herein by five (5) years.

## ARGUMENT

### A.    STANDARD OF REVIEW

Whether the lower court erred as a matter of law in its determination that this Circuit requires constructive termination as a justification for equitable relief in the form of back pay through judgment and front pay thereafter, and further erred in determining that the trial record did not demonstrate a constructive termination finding.  The court should also consider whether the Lower Court abused its discretion when it failed to award equitable relief to Appellant through the date of her separation from Appellee's employment.

### B.    EQUITABLE RELIEF SHOULD HAVE BEEN AWARDED BELOW

Title VII entitles individuals to be "[made] whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975); see also *Porter v. Natsios*, 414 F.3d 13, 20-21 (D.C. Cir. 2005).  "During the remedial stage of the

proceedings, the district court may make factual findings to determine appropriate 'make whole' relief under § 2000e-5(g)(1)…as long as the findings are consistent with the jury verdict." *Porter v. Natsios*, 414 F.3d at 21.  In awarding equitable relief, "a court must, 'as nearly as possible, recreate the conditions and relationships that would have been, had there been no unlawful discrimination.'" *Berger v. Iron Workers Reinforced Rodmen*, 170 F.3d 1111, 1119 (D.C. Cir. 1999) (quoting *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 372, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)).

Back pay is also a form of equitable relief under Title VII, see, 42 U.S.C. § 2000e-5(g)(1), and is not subject to the cap on compensatory damages. See, 42 U.S.C. § 1981a(b)(2). "The back pay provision of Title VII 'is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination'...." *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1139 (D.C. Cir. 1999) (quoting *Loeffler v. Frank*, 486 U.S. 549, 558, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988)). A back pay award should generally include prejudgment interest, *Id*., and the value of lost fringe benefits. *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995).  Once an Appellant is found to have suffered from a defendant's discrimination, he or she will be awarded an amount as back pay equal to the difference between what he or she actually earned and what he or she would have earned absent discrimination or retaliation.  See *Berger v.*

*Iron Workers*, Civil Action No. 75-1743, 1994 U.S. Dist. LEXIS 5342 at 40, 1994 WL 151292 (D.D.C. Apr. 14, 1994) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. at 421).   An award of back pay is calculated "by measuring the difference between the plaintiff's actual earnings for the period and those which he would have earned absent the discrimination of defendants." *Waters v. Wisc. Steel Works of Int'l Harvester Co.*, 502 F.2d 1309, 1321 (7th Cir. 1974). The award of back may also include regular and anticipated pay increases, even if they are performance-based, *Id.*, as well as lost fringe benefits, such as contributions to a company savings plan, sick leave pay, and compensation for medical expenses. "Back pay is calculated by subtracting the actual wages a discharged employee earned subsequent to termination from the amount the employee would have earned absent the employer's discriminatory conduct." *E.E.O.C. v. Sunfire Glass, Inc.*, No. CV-08-1784-PHX-LOA, 2009 WL 976495, 11 (D. Ariz. Apr. 10, 2009).

When appropriate, courts will also award front pay "to make a victim of discrimination 'whole' and to restore him or her to the economic position he or she would have occupied but for the unlawful conduct of his or her employer." *Barbour v. Merrill*, 48 F.3d 1270, 1279 (D.C. Cir. 1995) (internal citations omitted).  "[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v.*

*E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846, 121 S. Ct. 1946, 150 L. Ed. 2d 62 (2001).

Back and front pay issues are clearly before this court as non-compensatory economic damages. In this respect, federal courts have consistently construed section 706(g) as authorizing front pay awards in lieu of reinstatement. *Pollard supra*. at fn. 3. (stating further that "front pay is the functional equivalent of reinstatement.") The Appellant bears the initial burden of providing the district court with the essential data necessary to calculate a reasonably certain front pay award, including the amount of the proposed award, the length of time the Appellant expected to work for the defendant, and the applicable discount rate." *Barbour v. Merrill*, 48 F.3d at 1279 (internal quotation omitted). The Appellee may, of course, challenge the award's "amount, length, or interest rate, or [ ] establish as an affirmative defense that the Appellant failed to mitigate damages." *Id.* at 1279-80.

### 1. CONSTRUCTIVE TERMINATION IS NOT A CONDITION PRECEDENT TO EQUITABLE RELIEF IN THIS CIRCUIT.

The back pay provision of Title VII 'is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination'...." *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1139 (D.C. Cir. 1999) (quoting *Loeffler v. Frank*, 486 U.S. 549, 558, 108 S. Ct. 1965, 100 L. Ed.

2d 549 (1988)).   Appellant's victimization clearly resulted from Appellee's sexual harassment.  At issue, therefore, is Appellee's making Appellant  whole in terms of compensatory damages and equitable relief.   The Trial court, at the Appellee's insistence, determined that Appellant must demonstrate that she was constructively terminated prior to an award of back and front pay.   It then determined correctly that if the evidence presented in the record showed a constructive termination, such a showing even absent pleading constructive termination would justify equitable relief.   Appellant submits that while trial courts in this jurisdiction have embraced the constructive termination pre-condition adopted by other Circuits, this Circuit (like the 4th Circuit) has not.  This Circuit's decision in *Fogg v. Gonzales*, 492 F.3d 447 (C.A.D.C. 2007) is instructive.  In *Fogg*, the Court of Appeals reversed a lower court's decision not to award front pay where, as here, Plaintiff had obtained a jury award for compensatory damages in a hostile work environment case.   In reversing the lower court, the Court noted that: "the jury found for Fogg on all the issues [,] as to which its verdict is binding."  The Court further stated:

> "Front pay may be awarded to a Title VII plaintiff who cannot work because of "psychological injuries suffered ... as a result of the discrimination. . . ." *Pollard*, *supra at* 532 U.S. 843, 846, 121 S. Ct. 1946, 150 L. Ed. 2d 62 (2001).

In arguing that a front pay award "cannot be based upon the working life of the Plaintiff" because such an award would be highly speculative, Defendant

therein also relied upon *Barbour v. Merrill*, 48 F.3d 1270. Yet, upon closer

reflection, Barbour simply does not stand for the categorical argument advanced by

Defendant and the Trial Court. In fact, the Court in Barbour stated that:

> "A district court should not refuse to award front pay merely because some speculation about future earnings is necessary, or because parties have introduced conflicting evidence. Indeed, in other contexts, such as when valuing lost earning capacity in a personal injury case, courts (or juries) routinely engage in some speculation, based on the factual record the parties have established. E.g., *Wheeler Tarpeh-Doe v. United States*, 771 F. Supp. 427, 455-56 (D.D.C.1991), rev'd on other grounds, 28 F.3d 120 (D.C.Cir.1994); see *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir.1985), cert. denied, 474 U.S. 1057, 106 S. Ct. 796, 88 L. Ed. 2d 773 (1986). Courts are equally capable of resolving similar uncertainties when awarding front pay to victims of employment discrimination. See, e.g., *Shore v. Federal Express Corp.*, 42 F.3d 373, 378-79 (6th Cir.1994); *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir.1991); *Green v. USX*, 843 F.2d at 1531-32."

The *Barbour* Court, further, held that Plaintiff had established a prima facie

case for an award of front pay when: "he provided the district court with both a

proposed salary base for the award and a definite duration for the award. . . .All

that remained was for it to determine the appropriate duration of a front-pay award,

*See*, *e.g.*, *Shore*, 42 F.3d at 376; *Reneau*, 945 F.2d at 871, to incorporate any proper

salary increases, and then to determine the award's present value, using an

appropriate discount rate." In the instant case, not only has the jury found for

defendant on all verdict issues, the record contains un-refuted evidence from

Plaintiff's treating physician that Plaintiff's psychological injuries from post traumatic stress disorder could be permanent in nature and that reinstatement was not viable as recently as 2010.  Id. at    Moreover, Plaintiff's economic damages expert was prepared to provide more than the requisite information required to make the prima facie case for front pay damages.

Appellee's argument that constructive termination must be pled in order for front pay to be awarded is simply unsupported by the case law.  Notably, the neighboring 4th Circuit does not follow the so-called constructive discharge rule. *See*, *Dennis v. Columbia Colleton Med. CId. at Inc.*, 290 F.3d 639, 651 (4th Cir. 2002). In reviewing awards of back pay, the Fourth Circuit does not apply the 'constructive circuit rule' denying such pay to persons who leave an employer unless under conditions of a constructive discharge."

### 2.    TRIAL    EVIDENCE    CLEARLY    ESTABLISHED APPELLANT'S CONSTRUCTIVE TERMINATION.

Citing *Clark v. Marsh*, 665 F.2d 1168, 1176 (D.C. Cir. 1981), the trial court correctly determined that evidence presented at trial suffices to support a finding of constructive discharge made by the court at the equitable phase of trial, even absent a jury finding on the issue.  Trial Order and Memorandum, supra. at 17-18. To find constructive discharge, the court determines whether or not a reasonable person in the employee's position and circumstances would have felt compelled to resign.  *Bourque v. Powell Electrical Manufacturing Co*., 617 F.2d 61, 65 (5th Cir.

1980).  The employee thus does not have to prove it was the employer's purpose to force the employee to resign.  *Id.* at 65.

In March 2004, Appellee notified Appellant, while she was on Workers Compensation and during the pendency of her sexual harassment complaint before the Equal Employment Opportunity Commission ("EEOC"), that she would be terminated within one week as a result of her ability to perform her duties. (Plaintiff's Trial Exhibit 9).  Plaintiff argued during trial that this termination during the pendency of her sexual harassment related workers compensation constituted an adverse action.[3]  Indisputably, Appellee created Brown's health and financial victimization.  Brown, to preserve long term health benefits and income, necessarily applied for disability retirement.  The trial court, however, viewed her decision to apply for disability retirement as if her illness was unrelated to the underlying sexual harassment and assault, and as if there were no corroborative medical support which linked the two.  As such, the lower court erred in its determination that Appellant's "separation" was voluntary and necessary in order

---

[3] / Appellant argued the following on this issue:  "What's critical is that the reason why she is on worker's comp is not because some freak accident under the law, causally related.  She is on workers' compensation because some employer or employee-we say employer- caused that particular victimization.  Now the question becomes, do you fire her or do you address the victimization? When you fire her, you put her in an economic victimization mode.  She loses all of her employment benefits.  She has been working for 17 consecutive years until this particular act with outstanding and un-refuted outstanding performance evaluation."  October 22, 2010 Transcript at 17: 1-12.

to secure disability retirement.  The court, finding that no evidence existed in the trial record to support a constructive termination, stated as follows: "This court holds that Plaintiff was not terminated or constructively discharged from her employment with the Department of Corrections."  Trial Memorandum Opinion at 19."  The court further found that Appellant's "employment with the District ended as a requirement for her to receive disability retirement." Id. at 20.   It further opined that Appellant could not have been constructively terminated because her resignation was disconnected from her ongoing victimization; the court stated: "This court does not construe this severance as a constructive discharge.  Plaintiff's decision two and a half years after her last day of work at the Transportation Unit was based on her inability to complete her work as a corrections officer and not intolerable working conditions."  Id.  In reaching this decision, the lower court ignored several critical facts, particularly that Appellant's inability to perform her work was attributed to the intolerable working conditions that caused her medically documented decompensation through March 2004 and thereafter.  In this connection, Plaintiffs' psychiatric expert, Dr. Price, testified credibly that Brown suffered from post traumatic stress disorder, depression, and anxiety.  She further testified that Brown experienced an onset of paranoia in 2004-2005, caused by Appellee's unlawful conduct.   As a result, Dr. Price determined that Brown was unable to work.

27

Based upon the record herein, Brown, ill and dependent on benefits, was left with no choice but to retire in order to protect accrued benefits over her 17 years of service.  In this connection, the lower court made an artificial distinction between retirement and resignation.   It matters not if an employee is forced into an early less advantaged retirement or to effectively resign from her position; a forced resignation can clearly constitute a constructive termination.   *Clark v. Marsh*, the very case relied upon by the court in its constructive discharge analysis, involved a forced retirement versus forced resignation.  Further instructive is *Larranaga v. Department of Commerce*, a case involving an employee who retired from the Department of Commercee.  1991 WL 241903 (D.D.C. 1991), not reported in F. Supp.   In *Larranaga*, Plaintiff experienced a non-work related illness while working for the Department of Commerce.  His serious condition required bypass surgery.  To recuperate from his operation, Plaintiff took six (6) months of sick leave.  During this period, he did not inform the agency of his future employment plans and did not tell the agency when he intended to return to work. After his paid sick leave expired, Larranaga experienced severe financial problems. The only way that he could obtain a steady stream of income without returning to work was to retire. As a longtime government employee, Larranaga was eligible for immediate retirement   benefits.  The court found that the dual factors of ill-health and economic strain were obviously not part of a deliberate plan to forced retirement

28

brought on by the Department of Commerce.  Rather, they were the unfortunate realities which, however regrettable, led to plaintiff's voluntary decision to retire. On the contrary, Appellant's ill health and economic strain in this case were indisputably caused by her employer.  Such is the distinction between "voluntary" and "involuntary" retirement.  Appellant's injury was induced by Appellee.  Her retirement decision was dependent and involuntary, and thus demonstrated a constructive termination and justification for equitable relief.

### 3.    APPELLANT IS MINIMALLY ENTITLED TO BACK PAY THROUGH DATE OF DISABILITY RETIREMENT.

The trial court's ruling prohibiting any equitable relief whatsoever to Appellant, even through the date of her separation, is antithetical to existing legislative objectives to make victims of discrimination whole.  Here, Appellant's injuries were caused by Appellee's  continuous sexual harassment, which resulted in both her workers compensation and disability retirement. Her workers compensation continued, according to government personnel records, until her disability retirement began, which Appellant argued in the bifurcated trial below.[4] See Appellant's Trial Exhibits 10 and 11.

Even in *Donnell*, a case relied upon by Appellee, where the trial court rejected plaintiff's constructive discharge claims and denied Plaintiff front pay as a

---

[4] / There was no issue in this regard at trial. Appellant would have further substantiated this fact in a hearing on back and front pay.  Additionally Appellant, identified an economic expert and provided an appropriate report to Appellee.

29

matter of law, the court awarded back pay in the form of equitable relief for the period between her non-selection and her resignation. S*ee* Mem. Op., 653 F. Supp. 2d at 81-82. It is axiomatic that an employer's  constructive termination defense is triggered only after an employee is separated from employment, not before.  *See also Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 112 Fair Empl. Prac. Cas. (BNA) 924. (D.D.C. 2011).   Thence, based upon the record herein and the jury verdict in Brown's favor, the trial court should have minimally awarded Brown back pay through the date of her disability retirement. (See Plaintiff's Trial Exhibits 10 and 11.

## CONCLUSION

Based upon the foregoing arguments, Appellant submits that the trial court decision should be reversed in all respects.   Should this court determine that constructive termination must first be demonstrated in order to justify equitable damages, it should nevertheless determine that the trial record demonstrates that Appellant was constructively terminated in March 2004, when Appellee notified her of its intention to terminate her while she was on workers compensation as a result of Appellee's sexual harassment.

30

Respectfully submitted,

/s/ Donald M. Temple
Donald M. Temple #408749
TEMPLE LAW GROUP
1229 15th Street, NW
Washington, DC 20005
Tel: (202) 628-1101
Fax: (202) 628-1149

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e):

[ X ] this brief contains [*6,928*] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6):

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[  ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>January 10, 2012</u>      <u>/s/ Donald M. Temple</u>
                                          Donald M. Temple
                                          Counsel for Appellant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 10th day of January, 2012, I caused this Page Proof Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Holly M. Johnson
> Todd S. Kim
> Donna M. Murasky
> Carl J. Schifferle
> OFFICE OF THE ATTORNEY GENERAL
> Office of the Solicitor General
> 441 4th Street, NW, Sixth Floor
> Washington, DC  20001
> (202) 727-3400
>
> *Counsel for Appellee*

I further certify that on this 10th day of January, 2012, I caused the required number of bound copies of this Page Proof Brief of Appellant to be hand-filed with the Clerk of the Court.

/s/ Donald M. Temple
*Counsel for Appellant*